Covenhoven v. Executors of Covenhoven.

COVENHOVEN v. EXECUTORS OF COVENHOVEN.

1. The will of the testator, making special appropriations of the several parts of his property, is a law to the executors, from which they ought not to swerve unless authorized by some proper tribunal.

2. Any deviation from such authority is illegal, and at their own risk.

This was an action of debt, brought to recover the plaintiff's proportion of the residuary estate of the testator, his father.

The circumstances of the case are fully stated in the opinion of the Chief Justice.

KINSEY, C. J.

Matthew Covenhoven, by his will dated October 8th, 1765, bequeathed to his wife the interest of £300 and a bed, in lieu of her dower, and for her maintenance during her widowhood. If she married again, he directed the £300 to go into the residuum of his personal property, and to be put out at interest, for the benefit of the residuary legatees.

To his sons, William and Matthias, he devised all his lands in Middleton, in fee, " burthened in manner following :—1st. My son William shall have the whole of my lands and meadow until my son Matthias shall arrive at the full age of twenty-one years, to enable him to bring up my said son

Matthias, and all my children, with proper care of his mother, my wife, and provide for each of them the comfortable necessaries of life and schooling, until they or either of them shall choose to go to trades, or shall otherwise be disposed of in marriage." He then gives to his son William, some horses, cattle, and farming utensils, and the residue of his personal property, not disposed of, he bequeaths to his two sons, Jacob and Peter, and his four daughters, to be divided when the sons arrive at the age of twenty-one, and his daughters at the age of eighteen or shall marry. He then orders these portions to be placed out at interest as soon as it can conveniently be done, for the advantage of the children ; [211] and directs that if any of the legatees shall die under age, the share to which such deceased would have been entitled, shall survive. The will then orders that the negroes belonging to the testator should continue with the wife, to assist her and her sons, to provide for the support of the family, so long as they behaved themselves well ; but if they misbehaved, he directs them to be sold, and the moneys arising from the sale to be put out at interest as before.

The testator died in 1765, leaving Daniel Hendrickson and Cornelius Covenhoven his executors.

. The inventory amounted to £1,254 15s. 8¾d., with which and the interest received, amounting to £286 5s. 11d., the executors charge themselves.

The executors, after the death of the testator, and whilst Matthias was under age, supplied the wife and children with necessaries for their maintenance to the amount of £300, out of the personal estate ; by this means the personal estate has become diminished, and the question is, have they acted justifiably in so doing ?

This action is brought by one of the residuary legatees, and the executors allege that, having advanced this money for the benefit and support of the children, of whom the plaintiff is one, neither he nor they ought to demand it again from them.

The case is not completely stated. It does not appear that

the moneys thus advanced were distributed equally among the children ; and, indeed, it is impossible for us to presume that their necessities were so exactly similar as to have occasioned so exact a distribution. But, supposing it to have been equal, I think it requires no great labor to determine the question.

It is evident from the whole tenor of the will that the testator made a division of all his property, and a provision for the maintenance of his children which he deemed proper, and perhaps thought adequate. This disposition belonged to him as of right. He intended his children for trades, and, until they commenced their business, he wished that they should be kept together and maintained out of the profits of his property. He burthens his real estate with their maintenance. Hence, the executors had no right to apply the personal estate [212] for that purpose, or to expend it in any manner not authorized by the will. The will should have been a law to them, from which they were not warranted in swerving, unless under the directions of the Court of Chancery, Orphans' Court, or some such proper judicature. To assume such a power themselves was unjustifiable, and to sanction it would be to say they may set the will aside, and do what they themselves think expedient or proper. The law gives them no such power, nor ought they to possess it. Neither they nor we can destroy the will. The report of the auditors, therefore, disallowing this credit of £300, must be affirmed.